FILED
United States Court of Appeals
Tenth Circuit

May 9, 2016

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LAURIE SMITH,

        Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant - Appellee.

No. 15-1224

———————————————————

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:14-CV-02398-CMA)**

———————————————————

Submitted on the briefs.[*]

Loren M. Lambert, Arrow Legal Solutions, LLC, Midvale, Utah, for Plaintiff-
Appellant.

Michael A. Thomas, Special Assistant United States Attorney, Social Security
Administration, Denver, Colorado, for Defendant-Appellee.

———————————————————

---

[*]    Ms. Laurie Smith, the plaintiff, has requested oral argument. But we do not
believe oral argument would materially aid us in deciding the appeal. As a result,
we have decided the appeal based on the briefs. *See* Fed. R. App. P. 34(a)(2)(C);
10th Cir. R. 34.1(G).

Before **GORSUCH**, **McKAY**, and **BACHARACH**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal involves a claim against the Social Security Administration for disability benefits. The plaintiff, Ms. Laurie Smith, alleged disability based in part on

- impingement of her left shoulder,

- restrictions on her ability to (1) reach and (2) handle and finger objects, and

- moderate nonexertional limitations.

The administrative law judge concluded that Ms. Smith could work as a telequotation clerk, surveillance systems monitor, or call-out operator. As a result, the judge concluded that Ms. Smith was not disabled. Ms. Smith appealed to the district court, which upheld the administrative law judge's determination. Ms. Smith appeals to our court, and we affirm.

**1. We engage in de novo review, upholding the administrative law judge's findings as long as they were supported by substantial evidence and were not based on a misapplication of law.**

In this appeal, we engage in de novo review of the district court's ruling. *Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006). In conducting de novo review, we must determine whether the administrative law judge correctly applied

legal standards and made findings supported by substantial evidence. *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014). But in making this determination, we cannot reweigh the evidence or substitute our judgment for the administrative law judge's. *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013).

**2.     The administrative law judge did not fail to consider the left shoulder impingement.**

The Social Security Administration has established  a five-step process for consideration of disability claims. 20 C.F.R. § 416.920(a)(4). At the second step, the administrative law judge is to consider whether an impairment is severe. *Id.* § 416.920(a)(4)(ii). If the impairment is severe, the judge must continue to consider the impairment through the third, fourth, and fifth steps. *Id.* § 416.920(a)(4)(iii)-(v). If the claimant has no severe impairments, the judge can end the review at the second step. *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016).

Ms. Smith contends that the administrative law judge misapplied this process when confronted with evidence of a left shoulder impingement. The judge found severe impairments at step two, but did not mention a left shoulder impairment as one of these severe impairments. Ms. Smith regards that omission as an error, pointing to evidence of a Type II acromion with arthrosis of the acromioclavicular joint, a supraspinatus portion tear of the rotator cuff, and a

complete tear of the superior labrum. Appellant's Opening Br. at 4, 18 (citing App'x at 260-63, 265-73, 468).

If the judge erred, however, the error would be harmless. Having found severe impairments at step two, the judge went on to consider Ms. Smith's residual functional capacity. As a result, a failure to include the left shoulder impingement as a severe impairment would not have affected the outcome. In these circumstances, any error at step two would have been harmless. *See Allman v. Colvin*, 813 F.3d at 1330 ("[T]he failure to find a particular impairment severe at step two is not reversible error when the [administrative law judge] finds that at least one other impairment is severe.").

Though the administrative law judge did not mention a left shoulder impingement at step two, he apparently found impairments in both shoulders when assessing the residual functional capacity. There, for example, the judge found a reduced range of motion in Ms. Smith's shoulder joints and limited her ability to lift and carry objects. Ms. Smith does not say what else a left shoulder impingement would have prevented her from doing. As a result, we have no reason to disturb the administrative law judge's assessment of residual functional capacity based on a failure to incorporate limitations from a left shoulder impingement.

**3.     The administrative law judge did not err in failing to consider Dr. Common's opinions on (1) the necessity of breaks and (2) the ability to lift and carry.**

Ms. Smith was examined by Dr. Kelly Common, who expressed opinions including a need for breaks and limitations on the ability to lift and carry. According to Ms. Smith, these opinions were not adequately discussed in the administrative law judge's decision. We disagree.

In discussing a need for breaks, Ms. Smith apparently misread Dr. Common's report. Dr. Common stated that Ms. Smith could stand and walk for four hours at a time, but would need breaks every half-hour. App'x at 75, 468. Ms. Smith apparently read Dr. Common's report to require half-hour breaks for any kind of work activity. We read Dr. Common's report differently, requiring half-hour breaks only when Ms. Smith were to stand or walk for four hours. The administrative law judge apparently read the report the same way. This reading of Dr. Common's report was permissible.

Ms. Smith also contends that Dr. Common and the administrative law judge disagreed on how much Ms. Smith could lift or carry. Dr. Common said that Ms. Smith could carry and lift less than ten pounds. *Id*. The administrative law judge found that Ms. Smith could lift and carry up to ten pounds, but no more. *See* App'x at 28 (finding an ability to perform sedentary work); *see also* 20 C.F.R. § 416.967(a) (defining sedentary work).

The difference involves semantics. In one place, Dr. Common said that Ms. Smith could lift and carry less than ten pounds. App'x at 75. In another place on the same report, Dr. Common rated the limitation on lifting and carrying as ten pounds. *Id*. at 76. The administrative law judge found that Ms. Smith could lift and carry up to ten pounds, which is essentially what Dr. Common said.

In fact, the administrative law judge's findings matched Ms. Smith's testimony. Ms. Smith testified that she had trouble lifting or carrying anything over ten pounds. *Id*. at 44. We cannot fault the administrative law judge for finding precisely the same limitation asserted by Ms. Smith in her testimony.

**4.      The administrative law judge did not fail to properly weigh Dr. Common's opinions on fingering and handling objects.**

Ms. Smith also claims that the administrative law judge should have found greater limitations in the ability to finger and handle objects. This claim is based on Dr. Common's opinion, which included restrictions on the frequency and repetition of fingering and handling objects. In our view, the administrative law judge did not err.

The judge had two conflicting opinions on fingering, handling, and feeling. The first opinion was by Dr. Common, who expressed an opinion that Ms. Smith could finger and handle objects only on occasion and without repetition. *Id.* at 468. The second opinion was by Dr. James McElhinney. He reviewed Dr. Common's opinion, but concluded that Ms. Smith could finger and feel objects

without any restrictions. *Id.* at 76. Faced with the conflicting opinions, the administrative law judge adopted a middle ground. Rather than finding only an occasional ability to finger and handle (Dr. Common) or an unlimited ability to finger and feel (Dr. McElhinney), the administrative law judge found that Ms. Smith could frequently finger and handle objects. *Id.* at 28. In addition, the judge implicitly followed Dr. McElhinney's opinion that Ms. Smith needed no restrictions on repetitive movements. *Id.* In this manner, the judge arrived at an assessment between the two medical opinions without fully embracing either one. We upheld this approach in *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Under *Chapo*, the judge did not err in declining to fully incorporate Dr. Common's limitations on fingering and handling.

**5.     The administrative law judge did not err in assessing the impact of moderate nonexertional impairments.**

Ms. Smith also argues that the administrative law judge should have included moderate nonexertional impairments in assessing residual functional capacity. This argument is based on Dr. Gayle Frommelt's evaluation. Dr. Frommelt reviewed records and opined that Ms. Smith was moderately limited in her ability to

- maintain concentration, persistence, and pace,

- remain attentive and keep concentration for extended periods,

- work with others without getting distracted,

- complete a normal workday and workweek without interruption for psychologically based systems,

- perform at a consistent pace without excessive rest periods,

- accept instructions and respond appropriately to criticism by supervisors,

- get along with coworkers or peers without distracting them or engaging in behavioral extremes,

- respond appropriately to changes in the workplace, and

- set realistic goals or independently plan.

App'x at 78-79. Dr. Frommelt applied these assessments, concluding that Ms. Smith could (1) engage in work that was limited in complexity and (2) manage social interactions that were not frequent or prolonged. *Id.* at 80.[1]

The administrative law judge arrived at a similar assessment, concluding that Ms. Smith (1) could not engage in face-to-face contact with the public and (2) could engage in only simple, repetitive, and routine tasks. *Id.* at 28. Through

---

[1]     When answering questions on a form, Dr. Frommelt indicated that the limitations were moderate. App'x at 79-80. But the form explained that the questions provided only an aid to assess Ms. Smith's capacity. The form instructed Dr. Frommelt to assess the residual functional capacity in a narrative. *Id.* at 78. In that narrative, Dr. Frommelt assessed only limitations affecting the ability to engage in complex work and to engage in social interactions that were frequent or prolonged. *Id.* at 80; *see Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The [administrative law judge's] finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the [assessment of residual functional capacity].").

these findings, the administrative law judge incorporated the functional limitations of Ms. Smith's moderate nonexertional impairments.[2]

We addressed a similar issue in an unpublished opinion, *Lee v. Colvin*. No. 15-6027, 2015 WL 7003410 (10th Cir. Nov. 12, 2015) (unpublished). There a psychologist assessed moderate limitations in the claimant's ability to maintain attention and concentration for extended periods, to accept instructions and respond appropriately to supervisors' criticism, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. 2015 WL 7003410, at *2-3. The administrative law judge did not expressly incorporate these moderate limitations in the assessment of residual functional capacity. Instead, the administrative law judge found that the claimant was limited to simple tasks and work requiring only routine supervision or only superficial interaction with supervisors and peers. *Id.* at *3. In light of these findings, we rejected the claimant's challenge to the omission of moderate limitations in the administrative law judge's assessment of residual functional capacity. *Id.* In rejecting this challenge, we reasoned that the administrative law judge had

---

[2]    Ms. Smith questions how the administrative law judge's assessment incorporates the numerous moderate limitations indicated by Dr. Frommelt. Appellant's Opening Br. at 31-32. This is the wrong question. As discussed above, Dr. Frommelt's notations of moderate limitations served only as an aid to her assessment of residual functional capacity. We compare the administrative law judge's findings to Dr. Frommelt's opinion on residual functional capacity, not her notations of moderate limitations.

incorporated the moderate limitations in the course of assessing the claimant's residual functional capacity. *Id.*

Though *Lee v. Colvin* is not precedential, it is persuasive. The administrative law judges in *Lee* and in our case did not repeat the moderate limitations assessed by the doctor. But both administrative law judges incorporated these limitations by stating how the claimant was limited in the ability to perform work-related activities.

This approach is acceptable in our circuit, for we have held in a published opinion that an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity. *See Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) ("[T]he [administrative law judge] accounted for [the claimant's] moderate concentration, persistence, and pace problems in his [assessment of residual functional capacity] by limiting [the claimant] to unskilled work."). In *Lee v. Colvin*, we applied this approach, concluding that the administrative law judge did not err by incorporating the moderate limitations in restricting the claimant in jobs involving complex tasks, close supervision, or meaningful interaction with supervisors or peers. Based on the reasoning in *Lee v. Colvin*, we reject Ms. Smith's argument that the administrative law judge should have assessed additional nonexertional impairments.[3]

---

[3]     As the defendant acknowledges, there is one difference between Dr. Frommelt's conclusion and the administrative law judge's assessment: Dr.

**6.** **The administrative law judge did not err in failing to ask the vocational expert about the effect of greater limitations.**

Ms. Smith argues that the administrative law judge understated Ms. Smith's limitations when posing hypothetical questions to the vocational expert. We reject this contention. The administrative law judge had to ask only about the effect of those limitations ultimately assessed; the judge did not need to ask about the effect of limitations that he didn't believe applied. *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995).

**7.** **Ms. Smith's challenge to the defendant's factual statements does not affect the outcome.**

In her reply brief, Ms. Smith argues that the government (1) overstated her level of activity, (2) erroneously suggested that she had failed to obtain medical treatment when recommended, and (3) inappropriately suggested that Ms. Smith had inflicted her own shoulder injury. These arguments do not affect the Court's analysis: We have decided the appeal based on what the administrative law judge found, not the defendant's factual statements in its response brief.

**8.** **Disposition**

We affirm.

---

Frommelt stated that Ms. Smith could manage social interactions that were not frequent or prolonged, and the administrative law judge found that Ms. Smith could not engage in personal contact with the public. App'x at 80. But Ms. Smith has not argued that this difference was material.