FILED
United States Court of Appeals
Tenth Circuit

November 1, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

STACY C. PAULSEN,

      Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant - Appellee.

No. 15-1277
(D.C. No. 1:12-CV-01675-RM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HARTZ** and **PHILLIPS**, Circuit Judges.
_____

Stacy C. Paulsen appeals from a judgment of the district court affirming the

Commissioner's denial of her application for Social Security disability benefits and

supplemental security income benefits.  She alleged disability in August 2009, at age

43, based on degenerative disc disease, chronic back pain, anxiety, and depression.

The ALJ found that she could perform light work involving no complex tasks and

with limited social interaction, and that she could perform work that exists in

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

significant numbers in the national economy. The Appeals Council denied Ms. Paulsen's request for review. She then filed a complaint in the district court, which affirmed the Commissioner's decision.

The arguments in Ms. Paulsen's briefs on appeal are somewhat jumbled. We see three challenges: (1) The ALJ failed to properly evaluate her credibility; (2) the ALJ failed to properly weigh the medical evidence; and (3) the ALJ improperly denied her motion to strike the testimony of the vocational expert (VE). Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

## I. STANDARD OF REVIEW

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Id*. (citation and internal quotation marks omitted). Even where inconsistent conclusions can be drawn from the evidence, we must affirm the agency if the conclusion it drew is supported by substantial evidence. *See id*. In other words, "[w]e may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (brackets and internal quotation marks omitted). When we review the ALJ's decision, "[t]he more comprehensive [his] explanation, the easier our task . . . ." *Keyes-Zachary v. Astrue*,

2

695 F.3d 1156, 1166 (10th Cir. 2012).  But "[w]here . . . we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal."  *Id.*

## II.  CREDIBILITY DETERMINATION

Ms. Paulsen argues that the ALJ erred when he concluded that "her statements may not be entirely credible."  Aplt. App. at 37.  We disagree.

The framework for evaluating the intensity and persistence of symptoms and their functional effects is provided in 20 C.F.R. §§ 404.1529(c) and 416.929(c).  *See also* SSR 96-7, 1996 WL 374186, at *1 (July 2, 1996) ("When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities.  This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects"), *superseded by* SSR 16-3p, 2016 WL 1119029 (effective Mar. 28, 2016).

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted).  "[F]indings as to credibility, [however,] should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of

3

findings." *Id*. (internal quotation marks omitted).  An ALJ is required to do more than simply "recite[] the general factors [he] considered . . . [without] refer[ing] to any specific evidence."  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  But no specific format is required.  "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied."  *Id*.

The ALJ's analysis meets this test.  He spent two pages discussing factors such as Ms. Paulsen's daily activities, conflicting statements she gave to medical providers, the record of conservative medical treatment, her ability to work with the same allegedly disabling impairments, and evidence that she exaggerated her symptoms.  The ALJ's credibility findings are closely and affirmatively linked to substantial evidence and may not be disturbed.

### III.  EVALUATION OF MEDICAL-SOURCE EVIDENCE

The ALJ is required to assess the claimant's residual functional capacity (RFC), which is the most she can do despite her limitations.  *See* 20 C.F.R. §§ 404.1545(a), 416.945(a).  In doing so, the ALJ must give consideration to all the medical opinions in the record.  *See id*. §§ 404.1527(c), 416.927(c).  He must also discuss the weight he assigns to opinions of treating sources.  *See id*.  The RFC must be based on the record as a whole, which includes not only the medical evidence but also the claimant's subjective allegations.  *Id*. §§ 1545(a), 416.945(a).

4

## A. Dr. Hess

Ms. Paulsen argues that the ALJ did not properly weigh a January 2011 statement by Douglas Hess, M.D. concerning her lumbar-spine impairment. Dr. Hess opined that because of that impairment she (1) needed frequent breaks between sitting, standing, and walking; (2) could lift and carry less than ten pounds; and (3) would miss more than four days of work a month. He also prepared a statement on Ms. Paulsen's cervicalgia, noting that she had headaches approximately two times a week but medication helped.

The ALJ evaluated Dr. Hess's opinion as being from "an apparent treating physician," Aplt. App. at 39; but after applying the relevant factors, he found that Dr. Hess's opinion was "not entitled to any weight," *id*. at 40. According to Ms. Paulsen, the ALJ erred when he declined to afford Dr. Hess's statement either controlling weight or any deference. We are not persuaded.

A treating-source opinion concerning the nature and severity of a claimant's impairment is entitled to controlling weight provided it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Because the ALJ applied this law, we turn to whether his finding was supported by substantial evidence. It was.

The ALJ provided a comprehensive discussion and explanation of the medical evidence, including Dr. Hess's opinion itself. Dr. Hess's statement does not mention a single clinical or laboratory diagnostic technique as the basis for his opinion. And,

5

as the ALJ noted, Dr. Hess's opinion was "disproportionate to the objective medical evidence overall," Aplt. App. at 39, which amounts to saying that it was inconsistent with the other evidence. Ms. Paulsen faults the ALJ for failing to use the exact words used in the regulations when he declined to give Dr. Hess's opinion controlling weight. But we have rejected a requirement for technical perfection; instead, it is enough if "we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied . . . ." *Keyes-Zachary*, 695 F.3d at 1166.

It is not enough, however, for the ALJ just to decline to give a treating-source opinion controlling weight; he must go on to determine what weight to give the opinion using the factors in § 404.1527(c)(2)(i), (c)(2)(ii), and (c)(3) through (c)(6), and in § 416.927(c)(2)(i), (c)(2)(ii), and (c)(3) through (c)(6). The ALJ did that. Among other things, he considered (1) Dr. Hess's limited longitudinal treating relationship with Ms. Paulsen; (2) the conclusory nature of the opinion; (3) internal inconsistencies in the opinion; (4) the conflict between the opinion and the findings from Dr. Hess's May 2010 examination; and (5) the conflicts between the opinion and the other medical evidence. The ALJ's finding that Dr. Hess's opinion was not entitled to any weight is supported by substantial evidence.

Ms. Paulsen specifically takes issue with the ALJ's analysis of her alleged migraine headaches. She contends that the ALJ ignored Dr. Hess's January 2011 statement that she suffered from severe headaches "approximately two times a week," accompanied by nausea and vomiting. Aplt. App. at 419. But as the ALJ

6

explained, "[T]here is insufficient *medical* evidence to establish that [the headaches] are a medically determinable physical impairment." *Id*. at 24 (emphasis added). Dr. Hess's statement mentions no supporting medical evidence and, apparently, was based on Ms. Paulsen's word. The sole mention of migraines in the medical records was Ms. Paulsen's self-reporting of them to Caroline S. Guillebaud, M.D., the physician who completed a consultative physical examination in March 2010, two months before Dr. Hess saw her. (She told Dr. Guillebaud that "she also has migraines that she is not on any controller medications for. She says that she has migraines every day. She lays down and they eventually go away. She does not have any . . . nausea or vomiting with the migraines." *Id*. at 327.) The record contains no medical diagnosis of migraines, and the ALJ found that "the record is devoid of any evidence that [Ms. Paulsen] ever sought treatment for migraines." *Id*. at 24. When, as here, the only evidence of migraines is self-reporting, the ALJ can also consider the claimant's lack of credibility; and as discussed above, the ALJ found that Ms. Paulsen's credibility was doubtful (note that she told Dr. Guillebaud that she experienced no nausea or vomiting with migraines, contrary to Dr. Hess's report). Under these circumstances, the ALJ did not err in affording no weight to Dr. Hess's statement. *See Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2008) (if a physician's opinion regarding the claimant's migraines was not supported by the evidence of record, "the ALJ's reasons for not crediting [his opinion] are in accordance with the governing regulation[s] and case law").

7

Ms. Paulsen also faults the ALJ for noting that Dr. Hess's opinion was prepared, in part, "for the purpose of . . . achieving a positive outcome in her applications." Aplt. App. at 39. She argues that it was error for the ALJ to reject the treating physician's opinion simply because it advocated Ms. Paulsen's claim. To be sure, "an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." *McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002). But the ALJ provided ample additional reasons for discounting Dr. Hess's opinion.

## B. Nurse Moss

Ms. Paulsen also asserts that the ALJ improperly weighed the opinion of Mallory Moss, a nurse practitioner who had seen Ms. Paulsen regularly. In January 2011, Ms. Mallory completed a "Form Mental Residual Capacity Questionnaire," also signed by a therapist, in which she opined that Ms. Paulsen was "[u]nable to meet competitive standards" in several areas of mental functioning, and had "[n]o useful ability to function" in several others. Aplt. App. at 422-23.

The ALJ provided a comprehensive discussion of Ms. Moss's opinion, observing that several of the limitations found by Ms. Moss were supported exclusively by Ms. Paulsen's own reports. He then proceeded to analyze Ms. Moss's opinion under the regulations that apply to nonacceptable medical sources. *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) ("In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it

8

affects your ability to work. . . .").  The ALJ found that "[g]iven the lack of objective support or clinical findings for these statements, . . . [Ms. Moss's] opinion is not entitled to any weight."  Aplt. App. at 41.

Ms. Paulsen argues that "[t]he ALJ was not entitled to disregard the serious problems set out in Ms. Moss's opinion simply because she is a [nurse]."  Aplt. Opening Br. at 28 (parentheticals and internal quotation marks omitted).  But "[i]n the case of a nonacceptable medical source like [Ms. Moss], the ALJ's decision is sufficient if it permits us to 'follow the adjudicator's reasoning.'"  *Keyes-Zachary*, 695 F.3d at 1164 (quoting SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006)).  The ALJ's analysis sufficed in this regard.  He explained that Ms. Moss's "responses on the form are conclusory in nature and disproportionate to the objective medical evidence overall."  Aplt. App. at 41.  He noted that Ms. Moss's responses were inconsistent with "her own treatment notes, [which] reflect that with medication [Ms. Paulsen's] symptoms improved and she was doing well, and was more social and active than alleged," and in particular "her most recent notes reflect[ed] that [Ms. Paulsen] was doing well."  *Id*.  The ALJ further noted that the "form consists of 'check the box' type answers, . . . with [the] accompanying narration indicating that this is what [Ms. Paulsen] reported, rather than what was found on exam [or] supported by the evidence of record."  *Id*.

## C.  Dr. Valette

The third opinion that Ms. Paulsen argues was improperly weighed was from Brett Valette, Ph.D., who completed a consultative psychological examination in

9

March 2010.  She argues that the ALJ erred by not assigning a specific weight to the opinion.  We disagree.

Dr. Valette noted that Ms. Paulsen suffered from some psychological conditions.  The ALJ discussed Dr. Valette's findings in detail, including his opinion that she had "major depression, post-traumatic stress disorder, attention deficit hyperactivity disorder, and polysubstance abuse." *Id*. at 36.  But Dr. Valette did not assign any functional limitations to Ms. Paulsen other than to mention that Ms. Paulsen "*probably* has difficulty with concentration and remembering because of attention problems." *Id*. at 337 (emphasis added.)  Accordingly, the ALJ was not required to consider Dr. Valette's opinion in formulating Ms. Paulsen's RFC. "[T]he mere presence of [a condition] is not necessarily disabling.  Rather, [the condition], alone or in combination with other impairments, must render claimant unable to engage in any substantial gainful employment." *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995) (citations, brackets and internal quotation marks omitted).  The mere diagnosis of a condition does not establish its severity or any resulting work limitations.

In any event, Dr. Valette's opinion was taken into account by the ALJ when he accepted the assessment of Sara Sexton, Psy. D., a state agency psychological consultant, who based her opinion on the record, including Dr. Valette's report, and noted Ms. Paulsen's problems with attention, concentration, and memory but did not find them disabling.

10

**D. Dr. Sexton**

Next, Ms. Paulsen faults the ALJ for failing to specifically include the moderate limitations noted by Dr. Sexton in her mental-residual-functional-capacity assessment. But there was no need for the ALJ to repeat the moderate limitations assessed by Dr. Sexton because the effects of the limitations were explained in Dr. Sexton's narrative, which limited Ms. Paulsen to unskilled work with limited social interaction. *See Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (ALJ can account for moderate nonexertional impairments by limiting the claimant to particular types of work activity).

Ms. Paulsen further argues that the ALJ failed to include Dr. Sexton's limitations on her ability to work with coworkers and supervisors in formulating her RFC. But this argument was forfeited. We have examined Ms. Paulsen's opening brief in district court and find no argument about the ALJ's failure to include this particular limitation in formulating Ms. Paulsen's RFC. Although her reply brief in district court mentioned that the ALJ failed to consider the limitations regarding coworkers and supervisors, a brief mention in a reply brief, without development of the argument, will not preserve an issue. We therefore will not consider her argument on appeal. *See Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) ("The scope of our review . . . is limited to the issues the claimant properly preserves in the district court . . . .").

11

**E. Dr. Snodgrass**

The final allegedly ignored physician is David Snodgrass, M.D. On October 12, 2009, he completed a Colorado Department of Human Services Med-9 Form, used to determine medical eligibility for the Aid to the Needy and Disabled program. He checked a box stating that Ms. Paulsen "has been or will be totally and permanently disabled to the extent [she is] unable to work at any job due to a physical or mental impairment," citing her back pain and mental-health issues. Aplt. App. at 271.

Ms. Paulsen appears to argue that Dr. Snodgrass's opinion was entitled to great weight on the issue of whether she was disabled. We are not persuaded. In support of his conclusion that Dr. Snodgrass's opinion was not entitled to any weight, the ALJ explained, among other things, that Dr. Snodgrass had a limited longitudinal treatment relationship with Ms. Paulsen, his statement was conclusory in nature, and it was disproportionate to the objective medical evidence overall. And on the ultimate issue of whether Ms. Paulsen was disabled, the ALJ correctly stated the law when he said that "the determination of whether [Ms. Paulsen] is disabled is an issue reserved to the Commissioner." *Id.* at 39; *see Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) ("[F]inal responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]."); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

12

**F. Overall evaluation of the medical evidence**

Ms. Paulsen argues generally that the ALJ examined the opinions of Dr. Hess and Ms. Moss to see if they outweighed the other medical evidence, instead of "the other way around," as required by *Goatcher v. United States v. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995). And she complains that the ALJ did not follow *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004), and *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987), because he "gave more weight to [non-treating medical sources] than to [Ms. Paulsen's] treating healthcare providers," Aplt. Opening Br. at 29. But this argument overlooks the view expressed in *Goatcher* that the ALJ can "disregard[] the treating physician's opinion that a claimant is disabled" if he "give[s] specific, legitimate reasons." *Id.* Neither *Robinson* nor *Frey* command that an ALJ defer to a treating medical provider's opinion in all instances. The ALJ may discount the opinions of a treating medical source when, as here, the ALJ provides good reasons for doing so. *See Robinson*, 366 F.3d at 1082, *Frey*, 816 F.2d at 514; *see also* 20 C.F.R. §§ 404.1527(c)(2)(i), (c)(2)(ii), and (c)(3) through (c)(6), 416.927(c)(2)(i), (c)(2)(ii), and (c)(3) through (c)(6).

Ms. Paulsen also argues that the ALJ failed to consider her obesity, asthma, chronic-pain syndrome, and left-knee impairment. We see no error. The ALJ did discuss the alleged left-knee impairment, and found no "medically determinable physical impairment, or [one] that has resulted in more than minimal functional limitations." Aplt. App. at 24. As to the other impairments, the ALJ said that he

considered "the entire record." *Id.* at 23. We take him at his word. *See Flaherty*, 515 F.3d at 1071. And there is no evidence that Ms. Paulsen's obesity, asthma, or chronic-pain syndrome, separately or in combination with her other impairments, resulted in any work-related limitations beyond those found by the ALJ. Diagnosis of a condition does not automatically mean that the claimant is disabled; what matters is whether the condition results in work-related limitations. *See Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988).

## IV. MOTION TO STRIKE THE VE'S TESTIMONY

Once he determined Ms. Paulsen's RFC, the ALJ proceeded to determine whether she could work. The VE testified that someone with an RFC that limited her to "a full range of light [work and] [n]on-exertional limitations of no complex tasks, defined as SVP 2 or less[,] [and] no dealing with the general public," Aplt. App. at 70, could perform several jobs in the national economy.

Ms. Paulsen's attorney asked the VE a series of hypothetical questions based on the "moderate" limitations noted in Dr. Sexton's report. The VE testified that based on the definition of *moderate* in the Social Security training manual, there would be work that Ms. Paulsen could perform. The ALJ denied the attorney's request for the VE to produce the manual to show the definition of *moderate* or, in the alternative, to strike the VE's testimony.

The ALJ's rulings were correct. Neither the RFC nor the relevant hypothetical posed to the VE contained the term *moderate*. Although the hypotheticals posed by Ms. Paulsen's attorney used the term, the term is irrelevant. General terms or

14

severity ratings such as *moderate* should not be used in the RFC or hypotheticals because they "do not describe function and do not usefully convey the extent of capacity limitations."  SSA, Program Operations Manual (POMS) DI § 24510.065.B.1.c, available at https://secure.ssa.gov/poms.nsf/lnx/0424510065.

## V.  CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court


Harris L Hartz
Circuit Judge