FILED
United States Court of Appeals
Tenth Circuit

October 4, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DONNA WHITE,

    Plaintiff - Appellant,

v.

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

    Defendant - Appellee.

No. 17-5030
(D.C. No. 4:15-CV-00443-PJC)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McKAY**, and **MATHESON**, Circuit Judges.
_____

Donna White seeks reversal of the district court's judgment upholding the

decision of an administrative law judge (ALJ) to deny her application for social

security disability benefits.[1] We have jurisdiction under 28 U.S.C. § 1291 and

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It may
be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

[1] In her opening brief, Ms. White states that she applied for both supplemental
security income and disability benefits. But the record shows her application was for
disability benefits only.

42 U.S.C. § 405(g).  We affirm.

## I.    BACKGROUND

Ms. White and a vocational expert (VE) testified at her administrative hearing on February 23, 2015.  In his March 25, 2015 decision, the ALJ found

(1)  Ms. White suffered from the severe impairments of degenerative disc disease; status post fusion at C3-4, C4-5, and C-5; bilateral carpal tunnel syndrome; status post right carpal tunnel release; chronic obstructive pulmonary disease; diabetes; obesity; adjustment disorder with depressed mood; posttraumatic stress disorder (PTSD); and panic disorder.

(2)  These impairments did not meet or equal the listings for presumptive disability.

(3)  Ms. White could not perform her past work as a sales and service representative, rehabilitation training specialist, or office worker, but she had the residual functional capacity (RFC) to perform a limited range of light work.

The VE identified jobs a person with Ms. White's RFC could do that existed in significant numbers in the national economy.  Consequently, the ALJ determined at step five of the controlling five-step sequential evaluation process, *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the five-step framework for determining disability), that Ms. White was not disabled under the Social Security Act.

The Appeals Council denied review.  Ms. White appealed to the district court,

2

which affirmed the agency's denial of benefits.

## II.     LEGAL STANDARDS

"We review the district court's decision de novo and independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal quotation marks omitted).

We examine the record as a whole, do not reweigh the evidence, *id.*, and do not "substitute our judgment for that of the agency," *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[D]isability" requires both an "inability to engage in any substantial gainful activity" and a "physical or mental impairment, which provides reason for the inability." *Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (internal quotation marks omitted).

## III.     DISCUSSION

On appeal, Ms. White presents three challenges to the ALJ's finding that she is not disabled:

(1) The ALJ did not properly evaluate and weigh the mental limitations evidence.

(2) The ALJ's credibility finding was flawed.

(3) The RFC assessment did not adequately account for her neck restrictions.

### A. Mental Limitations

3

Ms. White contends the RFC, which states she can perform simple, repetitive tasks, does not account for her mental limitations. In particular, she argues the ALJ did not properly consider the physicians' opinions in formulating her RFC.

### 1. Dr. Paris

Dr. Paris performed a mental consultative examination on September 15, 2010. He reported that Ms. White's "ability to perform adequately in most job situations, handle the stress of a work setting and deal with supervisors or co-workers is estimated to be below average." Aplt. App. Vol. 4, at 655. The ALJ erroneously stated that Ms. White "*could* perform adequately in most job situations and handle the stress of a work setting." *Id.* Vol. 2, at 21 (emphasis added). Ms. White contends that restricting her in the RFC to simple and repetitive tasks did not cure this error because the ALJ did not account for her below-average ability to perform adequately and handle job stress.

Although the ALJ said that Ms. White could perform "adequately" rather than "below average," Ms. White does not explain why "adequately" does not include "below average." Moreover, other record evidence supports the RFC assessment— two psychological medical experts with the state agency stated that Ms. White could perform simple tasks with routine supervision and adapt to a work situation. Aplt. App. Vol. 2, at 24; *id.* Vol. 4, at 715, 809. Their opinions correctly recited and accounted for Dr. Paris' statement about Ms. White's below-average ability.

### 2. Dr. Kent

4

Ms. White also contends the ALJ improperly discounted Dr. Kent's opinion. Dr. Kent performed a mental consultative examination on July 13, 2009, and reported that Ms. White's PTSD and panic attacks would prevent her from concentrating and persisting on even simple tasks. *See id.* Vol. 3, at 446. But the ALJ explained that Dr. Kent's opinion regarding concentration and persistence was "inconsistent with [Dr. Kent's] mental status evaluation" and inconsistent with Ms. White's babysitting her two young grandchildren daily. *Id.* Vol. 2, at 21. The ALJ also contrasted Dr. Kent's statement that Ms. White "was not able to concentrate and persist on even simple tasks" with Dr. Kent's earlier statement that Ms. White "showed no significant attention or concentration difficulties on mental status evaluation." *Id.* Accordingly, the ALJ gave legitimate reasons for giving limited weight to Dr. Kent's opinion. *Cf. Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (stating "ALJ must provide specific, legitimate reasons for rejecting [examining physician's opinion]" (internal quotation marks omitted)). We cannot substitute our judgment for that of the ALJ. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (holding reviewing court may not "displace the agency's choice between two fairly conflicting views" (brackets and internal quotation marks omitted)).

### 3. RFC Limitation and VE Jobs

Ms. White contends the record contains no evidence that the jobs identified by the VE can be performed with a below-average ability to perform adequately and handle work stress. The ALJ included his RFC assessment in his hypothetical questions to the VE, who then identified suitable jobs. Ms. White offers no reason to

question the ALJ's reliance on the VE's expertise in identifying jobs someone with Ms. White's abilities and limitations could perform. *See Jensen v. Barnhart*, 436 F.3d 1163, 1166 (10th Cir. 2006) (finding no error in the ALJ's reliance on the VE's opinion concerning the claimant's need for adjustment to perform the identified jobs); *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) (finding no error at step four for the ALJ's use of the VE's testimony to support his own findings).

Ms. White also says simple work does not account for her below-average abilities. But we have held that an RFC limitation to performing simple tasks and work requiring only routine or superficial supervision can be appropriate to accommodate a claimant's moderate limitation in ability to maintain attention and concentration, accept instructions, respond appropriately to supervisors' criticism, and get along appropriately with peers. *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016). Ms. White's RFC limitation appropriately accounted for her below-average ability to perform adequately in most job situations and handle the stress of a work setting.

\* \* \* \*

For the foregoing reasons, substantial evidence supports the ALJ's RFC assessment and his determination that Ms. White could perform a range of light work limited to simple, repetitive tasks.

## B. Credibility

Ms. White challenges the ALJ's finding that her claim of disabling stress and pain was not fully credible. "Credibility determinations are peculiarly the province

6

of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks omitted). Those findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks omitted).

A claimant's failure to seek medical treatment is a proper factor in assessing the credibility of a claim of severe impairment. *See* SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996);[2] *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (stating that when evaluating credibility, the ALJ should consider, among other items, the claimant's regular contact with a physician and her willingness to try any prescribed treatment).

The ALJ did not reject all of Ms. White's complaints about her conditions, but instead relied on evidence discounting her assertion that her complaints were disabling. For his adverse credibility finding, the ALJ noted that:

(1) Even though Ms. White alleged PTSD since 2007, she did not seek mental-health treatment until October 2010.

(2) There was no evidence of pain treatment between January 2011 and December 2011, though she sought medical treatment for cough and congestion.

(3) A medical note dated February 24, 2009, said she was not taking her diabetes medication or exercising and was not complying with a diet.

---

[2] SSR 96-7p was superseded by SSR 16-3p, which did not take effect until March 24, 2016, after the ALJ's decision in this case.

(4)  Dr. Gourd, who conducted a consultative physical examination in September 2010, reported that the exam was less than fully reliable because Ms. White gave less than optimal effort.

(5)  Ms. White's counselor stated in November 2010 that Ms. White tended to exaggerate her behaviors and symptoms.

(6)  Although she claimed she had disabling depression, anxiety, and panic attacks, she did not see her mental-health provider from November 2011 to October 2012.

(7)  Her daily activities included caring for her three-year-old and six-month-old grandchildren five days a week with help from her husband and son, sitting in a recliner most of the day, and some household tasks.

In response to these points, Ms. White makes five arguments.

First, Ms. White contends the ALJ bolstered his adverse credibility finding by disregarding evidence.  To refute the ALJ's statement that she did not seek treatment for PTSD until October 2010, she points to clinic treatment notes referring to her PTSD dated March 2009, June 2009, and March 2010.  And she asserts that she was prescribed pain medication throughout 2011.  Ms. White fails, however, to show how the treatment notes conflict with the ALJ's conclusion that she sought only minimal treatment.

Second, Ms. White relatedly complains that the ALJ improperly emphasized her counselor's statements that she tended to exaggerate her behaviors and symptoms over the mental-health records documenting her depression, paranoia, and anxiety.

8

But she does not dispute that the counselor made the statements. Rather, she asks us to reweigh the evidence, which we cannot do.

Third, Ms. White claims the ALJ overlooked the opinion of consultative physician Dr. Wiegman and relied on the less-complete opinion provided by Dr. Gourd. But the ALJ did consider Dr. Wiegman's opinion, noting that he found slightly decreased arm strength, decreased grip strength, and decreased range of motion in the neck.

Fourth, as for the ALJ's reference to her lack of mental-health treatment from November 2011 to October 2012, Ms. White contends that her medical records after her date last insured of December 31, 2011, are irrelevant. On the contrary, evidence documenting a claimant's condition after her date last insured may be considered if it relates to the insured period. *See Blea v. Barnhart*, 466 F.3d 903, 913 (10th Cir. 2006) (remanding for further proceedings in light of medical evidence generated one year after claimant's last-insured date indicating he had significant pain-producing arthritis); *Hardman v. Barnhart*, 362 F.3d 676, 678, 681 (10th Cir. 2004) (directing ALJ to consider results of MRI performed after the claimant's date last insured, which was relevant to the period before the date last insured).

Fifth, Ms. White contends that her daily activities do not support the ALJ's finding that she is capable of a limited range of light work, arguing she needed help with almost all of those activities. But the ALJ did not rely on her activities of daily living as the sole basis for finding her not fully credible. Rather, the ALJ identified this evidence as one of several bases. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Wilson*,

9

602 F.3d at 1146 (considering ALJ's reliance on daily activities as a permissible part of substantial evidence supporting credibility determination).

We conclude that the ALJ's credibility determination is "closely and affirmatively linked to substantial evidence" in the record. *See Wilson*, 602 F.3d at 1144 (internal quotation marks omitted). To the extent Ms. White seeks a reweighing of the evidence, we cannot do so.

## C. Neck Restrictions in RFC Assessment

Ms. White contends the RFC assessment did not adequately account for her neck restrictions. The ALJ found that she should avoid working above shoulder level to avoid excessive strain on her neck. Ms. White asserts this finding does not consider her limited ability to look down or around. She also asserts that repeated movement will exacerbate her pain. She invokes Dr. Wiegman's opinion that her neck's range of motion was reduced to 30 degrees flexion and 40 degrees rotation. She criticizes the ALJ's reliance on Dr. Gourd's report, which she says did not record any limitation with flexion or rotation, complaining that Dr. Gourd's findings are contradicted by Dr. Mayoza, who found limitation of motion in flexion and extension.

The ALJ considered Dr. Wiegman's report as well as Dr. Mayoza's final report dated June 25, 2009, both of which disclosed decreased range of motion in the neck. Ms. White does not claim that either of those reports stated that she was unable to look down or around or that repeated movement would exacerbate her pain. As the ALJ recognized, Dr. Mayoza stated that Ms. White's neck condition "could interfere

10

with activities of daily living 'to a certain degree.'" Aplt. App. Vol. 2, at 21 (quoting *id.* Vol. 3, at 439). And contrary to Ms. White's claim, Dr. Gourd's evaluation included evaluation for neck flexion, as well as extension. Although he found no limitation, he noted that Ms. White "would not attempt" this maneuver during the examination. *Id.* Vol. 4, at 661. In addition, the ALJ relied on the opinion of a State Agency medical expert, Dr. Wainner, that Ms. White could perform light work activity. Ms. White again asks that the evidence be reweighed, which we again must decline to do. Rather, we hold that the ALJ's RFC assessment is supported by substantial evidence in the record.

We also reject Ms. White's related argument that the hypothetical questions posed to the VE did not relate all of her impairments because they did not include her claimed neck limitations. *See Krauser v. Astrue*, 638 F.3d 1324, 1333 (10th Cir. 2011) ("At step five . . . an ALJ may relate the claimant's impairments to a VE and then ask the VE whether, in his opinion, there are any jobs in the national economy that the claimant can perform." (internal quotation marks omitted)). The ALJ properly included in the hypothetical questions the neck limitations that are supported by the evidentiary record. *See Smith*, 821 F.3d at 1270 (holding ALJ's questions to VE had to include only the limitations ultimately assessed).

11

## IV.   CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge