**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 18, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JANICK WEBB,

    Plaintiff - Appellant,

v.

COMMISSIONER, Social Security
Administration,

    Defendant - Appellee.

No. 17-2216
(D.C. No. 2:16-CV-00777-WJ-GBW)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **EID**, **KELLY**, and **O'BRIEN**, Circuit Judges.
_____

Janick Webb appeals from the district court's decision affirming the Social

Security's Commissioner's denial of his Title II application for a period of disability

and Social Security disability insurance. Exercising jurisdiction under 42 U.S.C.

§ 405(g) and 28 U.S.C. § 1291, we affirm.

---

    [*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## BACKGROUND

Mr. Webb worked as an assistant manager at a convenience store. In 2008, he injured his back when stocking merchandise. And in January 2012, he again was injured when he was tackled by a drunk customer. He worked until March 28, 2012, then applied for disability benefits based on both physical and mental impairments.

At step one of the five-step sequential evaluation process, *see Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010), the administrative law judge (ALJ) found that Mr. Webb had not engaged in substantial gainful activity since his onset date. At step two, the ALJ found that he suffered from the following severe impairments: esophagitis, glossopharyngeal neuralgia, degenerative disc disease, Baker's cyst and chondromalacia patella, sinusitis, generalized anxiety disorder, somatoform disorder, major depressive disorder, and dissociative amnesia.

At step three, the ALJ concluded that Mr. Webb's impairments did not meet or medically equal the severity of a listed impairment. Then he assessed Mr. Webb with the residual functional capacity (RFC) to do light work with the following restrictions:

> [Mr. Webb] must be permitted to change position from sitting to standing or standing to sitting approximately every 30 minutes at the workstation. [He] can never climb ladders, ramps or stairs. He can frequently balance and stoop, and can occasionally [climb] ramps and stairs, kneel, crouch, and crawl. [Mr. Webb] cannot perform overhead reaching bilaterally, but can frequently reach and handle in all other directions bilaterally. [He] should avoid even moderate exposure to vibrations and hazards. He is limited to a moderate noise level . . . . [He] can perform simple, routine, repetitive tasks consistent with unskilled work. He cannot have contact with the public, and can have occasional superficial contact with

2

coworkers. [Mr. Webb] is limited to low stress work, which is defined as work requiring few decisions and few changes.

Aplt. App., Vol. I at 21.[1] Based on testimony from a vocational expert (VE), the ALJ concluded at step four that Mr. Webb could not perform his past relevant work. At step five, also based on the VE's testimony, the ALJ found that Mr. Webb could perform other jobs available in significant numbers in the national economy, specifically, laundry folder and price marker. The ALJ therefore denied Mr. Webb's application. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision, and the district court affirmed.

## DISCUSSION

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Id.* (citation and internal quotation marks omitted); *see also Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

---

[1] The RFC assessment states both that Mr. Webb can never climb ramps and stairs and can occasionally climb them. Mr. Webb does not challenge this inconsistency, and it is not relevant to the issues before the court.

Mr. Webb raises three challenges to the denial of benefits: (1) the ALJ failed to provide specific, adequate reasons for rejecting a treating physician's opinion; (2) the ALJ erred in considering the opinion of a consulting psychologist; and (3) the ALJ failed to resolve conflicts between the RFC and the requirements of light work, given Mr. Webb's sit/stand restriction.

## I.     The ALJ did not err in failing to afford controlling weight to a treating physician's opinion.

Mr. Webb saw orthopedist Paul Puziss from April 2009 until September 2012. Dr. Puziss diagnosed Mr. Webb with spinal stenosis, cervical degeneration, herniated discs, chronic left trapezius and sterncleidomastoid spasm, cubital tunnel syndrome, and ruptured left Baker cyst. In May 2012, Dr. Puziss opined that Mr. Webb could lift no more than five pounds, could not bend or stoop, and could not "stand for more than a few moments in any one position and ha[d] to move about." Aplt. App., Vol. III at 615. In June and August 2012, he increased the lifting restriction to fifteen pounds. The effect of Dr. Puziss's restrictions would be to limit Mr. Webb to sedentary work.

The ALJ gave Dr. Puziss's opinion very little weight for the following reasons:

> First, it appears that the limitation was based on [Mr. Webb's] subjective report rather than on objective evidence, as Dr. Puziss's records, and those of others, all discussed above, document minimal objective findings and none that would warrant a limitation to sedentary work. Furthermore, there was no objective change that would support the change from a five to 15-pound lifting restriction. In addition, the claimant did not see Dr. Puziss after September 2012, only six months after the alleged onset date, and subsequent records to not document objective findings or any change that would support a limitation to sedentary work. Finally, no other physician has subsequently assessed similar limitations. Therefore, because

4

Dr. Puziss's opinion is not well supported or consistent with the record considered as a whole, it is given very little weight.

*Id.*, Vol. I at 30-31. Mr. Webb challenges this explanation on both procedural and substantive grounds.

A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in the individual's case record." Social Security Ruling (SSR) 96–2p, 1996 WL 374188, at *2 (1996) (internal quotation marks omitted). But "if the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). "Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion." *Id.* (brackets and internal quotation marks omitted). "[T]he notice of determination or decision 'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *5).

Procedurally, Mr. Webb asserts that the ALJ's reasons were not sufficiently specific to allow this court to review the decision. We disagree. An ALJ may discount a treating physician's opinion because it is inconsistent with the weight of the evidence or assesses new restrictions without explanation or support. *See Allman v. Colvin*, 813 F.3d 1326, 1332 (10th Cir. 2016) (inconsistent with record); *Raymond*

5

*v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (same); *White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2002) (assesses new restrictions without explanation). While Mr. Webb takes issue with the ALJ's general reference to medical records "all discussed above," Aplt. App., Vol. I at 30, in this case it is not difficult to determine what inconsistencies the ALJ relied upon. "Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). And contrary to Mr. Webb's assertion, relying on those other medical opinions, which are all discussed earlier in the decision (and thus are apparent from the ALJ's decision itself), does not constitute an impermissible post hoc justification.

Substantively, Mr. Webb contends that Dr. Puziss's opinion is entitled to controlling weight. As part of this argument, he asserts that the record evidence as a whole does support Dr. Puziss's assessment. But substantial evidence supports the numerous instances of unremarkable findings by other treating physicians that the ALJ identified. Thus, Mr. Webb essentially invites us to reweigh the evidence, which we do not do, *see Oldham*, 509 F.3d at 1257-58; *Hackett*, 395 F.3d at 1172. Accordingly, we cannot conclude that the ALJ erred by failing to afford controlling weight to Dr. Puziss's opinion. *See Watkins*, 350 F.3d at 1300.

6

**II.  The ALJ did not fail to use the correct legal standard in evaluating a state agency consultant's opinion.**

Mr. Webb's next argument concerns the opinion of non-examining psychological consultant Edwin R. Holmes, PsyD.  In a Mental Residual Functional Capacity Assessment form (MRFCA), Dr. Holmes assessed moderate limitations in nine subcategories (Section I ratings) and then added narrative assessments regarding those ratings (Section III narrative assessments).[2]  The ALJ gave Dr. Holmes's opinion significant weight.  Mr. Webb asserts that (1) there are differences between certain of Dr. Holmes's Section I ratings and his Section III assessments; (2) the RFC failed to incorporate three of the Section I ratings in his RFC; and (3) the RFC failed to incorporate certain of Dr. Holmes's Section III assessments.

As the district court explained, under agency procedure, it is the Section III narrative assessments that document the RFC.  The MRFCA itself states that "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s)."  Aplt. App., Vol. I at 114; *see also Smith v. Colvin*, 821 F.3d 1264, 1268 n.1 (10th Cir. 2016) (highlighting form's narrative discussion).  And the Social Security Administration's Program Operations Manual Systems (POMS) provides that Section III of the MRFCA, not Section I, is for recording a medical consultant's formal RFC assessment.  POMS DI 24510.060 B.4.a; POMS DI 25020.010 B.1.  Nevertheless, an ALJ cannot ignore moderate Section I limitations.  If a consultant's

---

[2] The MRFCA in the record does not formally designate Section I and Section III.  The parties and the district court use the terms, however, and we follow suit.

Section III narrative fails to describe the effect of a Section I limitation or contradicts a Section I limitation, then the MRFCA is not substantial evidence to support an RFC. But if a Section III narrative adequately encapsulates the Section I limitations, then the ALJ may rely upon the narrative to formulate the RFC.

We agree with the district court that Dr. Holmes's Section III narrations adequately encapsulated his Section I restrictions, and the ALJ in turn adequately incorporated the Section III assessments into the RFC. We therefore affirm the denial of relief on this issue for substantially the reasons explained by the district court. *See* Aplt. App., Vol. V at 1185-89.

### III. The ALJ did not err in accounting for the need to alternate sitting and standing.

Finally, Mr. Webb argues that the ALJ erred with regard to Mr. Webb's need to alternate sitting and standing. Mr. Webb asserts that the sit/stand restriction, which provides that he must be able to change position approximately every thirty minutes, means that the ALJ found that he could stand or walk only four hours in an eight-hour workday. Pointing out that the full range of light work generally requires standing or walking for six hours out of an eight-hour workday, *see* SSR 83-10, 1983 WL 31251, at *6 (1983), he argues there is a conflict that the ALJ failed to resolve.

We are not convinced that the sit/stand restriction necessarily means that the ALJ limited Mr. Webb to four hours of standing in an eight-hour workday. As the Commissioner points out, "[t]he ALJ did not say that the hypothetical individual had

8

to stand for 30 minutes at a time, or sit for 30 minutes at a time, but instead said that 30 minutes was the maximum amount of time the hypothetical individual could stand (or sit) at one time." Aplee. Br. at 38. The ALJ's sit/stand restriction explicitly provided that Mr. Webb would change positions while remaining at the workstation, with the hypothetical question making it clear that the ALJ envisioned "there would be no associated loss of productivity." Aplt. App., Vol. I at 79. Such a situation would allow Mr. Webb to change positions at irregular intervals, meaning that he might stand more (or less) than four hours in a given workday.

To the extent that Mr. Webb claims that there is an unresolved conflict between the VE's testimony and the *Dictionary of Occupational Titles* (DOT), we disagree. "When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4P, 2000 WL 1898704, at *2 (2000). "[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). But as Mr. Webb admits, the DOT does not address sit/stand options. Therefore, there is no "apparent unresolved conflict" between the DOT and the VE's testimony.

Further, noting that the DOT does not address position changes, the ALJ asked the VE what his testimony relied on. The VE answered it was based on his twenty

9

years' experience as a rehabilitation counselor. The VE's experience is among the bases for reasonable explanations for conflicts. SSR 00-4p, 2000 WL 1898704, at *2. Therefore, even if there were a conflict between the VE's testimony and the DOT, the ALJ would have satisfied his obligation to elicit a reasonable explanation.

Similarly, to the extent that Mr. Webb claims that there is an unresolved conflict between the RFC and the VE's testimony, on the one hand, and the requirements of light work on the other hand, again we disagree. A sit/stand restriction does not necessarily mean that a claimant cannot do light work. Where a claimant "can do a little more or less than the exertion specified for a particular range of work," "the occupational base is affected and may nor may not represent a significant number of jobs." SSR 83-12, 1983 WL 31253, at *1, *2 (1983). "Where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource." *Id.* at *2. And particularly "[i]n cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base." *Id.* at *4. As required by SSR 83-12, the ALJ consulted the VE about the implications of Mr. Webb's sit/stand restriction. The VE opined that notwithstanding the restriction, Mr. Webb could perform jobs available in the national economy. And as stated, the VE adequately explained the basis for his opinion. Accordingly, there was no unresolved conflict.

**CONCLUSION**

The district court's judgment is affirmed.

Entered for the Court


Allison H. Eid
Circuit Judge