**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 15, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KAREN JOHNSON,

     Plaintiff - Appellant,

v.

NANCY A. BERRYHILL,[*] Acting
Commissioner of Social Security,

     Defendant - Appellee.

No. 16-1076
(D.C. No. 1:14-CV-03096-CMA)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **HOLMES**, and **MORITZ**, Circuit Judges.
_____

    Karen Johnson appeals a district court order affirming the Commissioner's

denial of disability insurance benefits. Exercising jurisdiction under 28 U.S.C.

§ 1291 and 42 U.S.C. § 405(g), we affirm.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Nancy A. Berryhill is substituted for
Carolyn Colvin as the Acting Commissioner of the Social Security Administration.

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

# I

Johnson claims she was disabled from January 1, 2006, through December 31, 2009, the date she last met the insured status requirements ("date last insured" or "DLI"). She suffers from rheumatoid arthritis ("RA"), deep vein thrombosis, obesity, fibromyalgia, sciatica, sleep apnea, insomnia, day-time somnolence, anxiety, and depression. After a hearing, an administrative law judge ("ALJ") concluded at the final step of the five-step evaluation process, see Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining five-step process), that Johnson was not disabled because she retained the residual functional capacity ("RFC") to perform a limited range of sedentary work. On judicial review, however, the district court reversed, concluding that the ALJ failed to demonstrate that he considered all of her impairments.

After a new hearing on remand, a different ALJ concluded that Johnson was not disabled. The ALJ determined that RA, deep vein thrombosis, obesity, and fibromyalgia were Johnson's only severe impairments, and that her other, non-severe impairments had no impact on the earlier RFC assessment; thus, Johnson still retained the RFC for a limited range of sedentary work. The ALJ incorporated much of the first ALJ's analysis, including the finding that Johnson's testimony was only partially credible. Relying on previous testimony from a vocational expert, the ALJ also concluded that Johnson could transition to other work in the national economy. The Appeals Council denied review, and the district court affirmed.

2

On appeal, Johnson contends the ALJ: (1) failed to consider all of her impairments and their combined effect; (2) improperly evaluated her RFC and credibility; and (3) relied on inaccurate hypothetical questions posed to the vocational expert at her first administrative hearing.

**II**

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." Mays v. Colvin, 739 F.3d 569, 571 (10th Cir. 2014) (quotation omitted). "[I]n making this determination, we cannot reweigh the evidence or substitute our judgement for the [ALJ's]." Smith v. Colvin, 821 F.3d 1264, 1266 (10th Cir. 2016).

**A**

Johnson argues that the ALJ failed to consider all of her impairments and their combined effect. In particular, she contests the ALJ's step-three finding that her impairments, in combination, do not meet or equal the criteria for a per se disabling impairment under the Social Security regulations. See Vigil v. Colvin, 805 F.3d 1199, 1203 (10th Cir. 2015) (observing that ALJ must determine at step three whether claimant's impairments meet or equal a listed impairment); 20 C.F.R. § 404.1520(a)(4)(iii) (same). "To show that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment." Lax v. Astrue, 489 F.3d 1080, 1085 (10th Cir. 2007). "An impairment

3

that manifests only some of those criteria, no matter how severely, does not qualify."

Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Johnson suggests that her impairments meet or equal listing 14.09D. That listing requires:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: (1) Limitation of activities of daily living. (2) Limitation in maintaining social functioning. (3) Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09D. Johnson does not cite any evidence showing that she meets these criteria. Although there was evidence confirming that she suffers from RA, a reviewing agency physician's report indicated that there was "[m]inimal da[ta] regarding RA aside from some synovitis" of the wrists. A physical functional capacity assessment further noted that despite an elevated rheumatoid factor, Johnson's "[f]ilms ha[d] not shown any erosive changes or joint space narrowing." Finally, to the extent Johnson asserts that her other impairments meet the requirements of a listing, the first ALJ considered evidence that her mental impairments did not restrict her activities of daily living ("ADLs") and imposed only mild limitations on her ability to maintain social functioning, concentration, persistence, or pace. The second ALJ incorporated the first ALJ's discussion into his analysis and expanded upon the combined impact of Johnson's non-severe impairments, including sciatica, sleep apnea, insomnia, and somnolence. Stating he had considered all the evidence, he concluded Johnson did not meet the requirements

4

for any listing. See Wall, 561 F.3d at 1070 (noting that if an ALJ indicates he has considered all the evidence, we generally take him "at his word" (brackets and quotation omitted)).

Nevertheless, Johnson asserts that the ALJ ignored evidence of her neck and back problems, specifically her degenerative disc disease, which she says caused marked limitations of her ADLs. Although there was evidence of minimal to moderate degenerative disc disease that predated the period of disability, see Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004) (recognizing that evidence of progressive condition from previously adjudicated periods of disability is relevant to disability determination), Johnson complained only once of sciatica, toward the end of her coverage period. The ALJ observed that this single complaint suggested only a minimal impact on her ability to work. Moreover, Johnson was prescribed oral medication and physical therapy for sciatic pain, and her physical exam showed her "spine [was] normal without deformity or tenderness." Johnson argues that this discussion of sciatica did not account for her low back pain, but the first ALJ recognized that she was experiencing generalized joint pain. To the extent Johnson insists the ALJ should have separately discussed her low back pain, the omission does not require reversal. See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012) ("[M]erely technical omissions in the ALJ's reasoning do not dictate reversal.").

Johnson also complained of neck and upper back pain in May 2009. Although an x-ray of her thoracic spine was normal, her doctor prescribed medication for neck

5

pain, and her rheumatologist diagnosed her with acute cervical strain, which was treated with injections. The ALJ did not discuss this evidence from Johnson's treating physicians, whose opinions generally are entitled to controlling weight. See Hamlin, 365 F.3d at 1215. However, these particular findings are not probative of any functional limitations—certainly not any at the "marked" severity level. Johnson nevertheless insists she had marked limitations of ADLs, relying on her own statements that she experienced fatigue and could walk no more than twenty steps before needing to rest. But a claimant's own statements of her symptoms cannot satisfy a listing's severity requirement. See 20 C.F.R. § 404.1529(d)(3). Thus, the ALJ correctly determined that Johnson did not meet the criteria for a listing-level impairment.

**B**

Johnson also contends the ALJ erred in assessing her RFC and credibility. The first ALJ concluded that she had the RFC for sedentary work, subject to certain restrictions. He further determined that Johnson's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with her RFC. The second ALJ incorporated these findings after concluding that Johnson's non-severe impairments had no impact on her RFC.

On appeal, Johnson argues that by incorporating a prior ALJ's findings as to RFC, the ALJ did not account for several of her impairments and their combined effect. See 20 C.F.R. § 404.1545(a)(2) (providing that the agency "will consider all

6

of [a claimant's] medically determinable impairments . . . , including [those] that are not 'severe'"). Specifically, she insists the ALJ failed to account for her degenerative disc disease. As explained above, however, he evaluated her complaint of sciatica but found it had no impact on the previous RFC assessment, which already accounted for her joint pain. Johnson suggests there was other evidence of sciatica, but her citations either reference the ALJ's decision or medical notes documenting her own reports of pain in her left leg and decreased sensation in her right lower extremity, neither of which were associated with degenerative disc disease or sciatica.

Johnson further contends the ALJ failed to account for her fibromyalgia because he found that it did not change her RFC, despite determining at step two that it constituted a severe impairment. But this argument overstates the impact of the agency's summary step-two evaluation on the detailed RFC determination at step four. At step two, the ALJ determines whether the claimant has a medically severe impairment—that is, an impairment that "significantly limits a claimant's physical or mental ability to do basic work activities." Allman v. Colvin, 813 F.3d 1326, 1330 (10th Cir. 2016) (brackets omitted) (quoting 20 C.F.R. § 404.1520(c)). But at that point in the sequential evaluation process, the required showing is de minimis, id., and does not account for the ALJ's assessment, at step four, of a claimant's ability to work at a given exertional level, see 20 C.F.R. § 404.1520(e) (explaining that if claimant has an impairment that does not meet or equal a listing, the ALJ will assess claimant's RFC to determine disability at steps four and five of the evaluation

7

process).  Thus, a finding that an impairment is severe at step two is not determinative of the claimant's RFC and cannot substitute for a proper step-four analysis.  Cf. Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007) (stating that "a finding of severe impairments (which is made at step two) does not require the ALJ to find at step five that the claimant did not have the residual functional capacity to do any work," as "the ALJ still had the task of determining the extent to which those impairments . . . restricted her ability to work").

Given this framework, although the ALJ found at step two that Johnson's fibromyalgia was a severe impairment, he was still required to assess whether it presented additional functional limitations affecting her RFC.  On that score, the ALJ determined that Johnson's fibromyalgia did not change her RFC because she was not diagnosed until 2010, after her DLI.  Johnson contends this "post-DLI diagnosis was not a valid reason for discounting" the effects of her fibromyalgia.  But "the proffered evidence [must] relate to the time period for which the benefits were denied."  Hargis v. Sullivan, 945 F.2d 1482, 1493 (10th Cir. 1991).  Moreover, the ALJ stated that he considered her symptoms to the extent they related back to the period of disability, but he nevertheless determined there was no impact on her RFC. Johnson disputes this conclusion, citing her sleep issues, fatigue, anxiety, and depression; however, the ALJ found that those impairments imposed only minimal limitations on her ability to work.  And although Johnson's fibromyalgia may have manifested symptoms similar to these impairments, see Wilson v. Astrue, 602 F.3d

8

1136, 1143 (10th Cir. 2010), she cites no evidence that any pre-DLI symptoms impacted her RFC.

Johnson also asserts that her RFC was skewed because the ALJ improperly discredited her testimony concerning her pain, her sleep habits, the side effects of her medication, the frequency of her RA flares, and the limitations on her ADLs. "Credibility determinations are peculiarly the province of the finder of fact, and [this court] will not upset such determinations when supported by substantial evidence." Newbold v. Colvin, 718 F.3d 1257, 1267 (10th Cir. 2013) (quotation omitted). Although an ALJ "need not make a formalistic factor-by-factor recitation of the evidence" pertaining to a claimant's credibility, he should consider such factors as her daily activities, reactions to treatment, "persistent attempts to find relief for her pain[,] . . . willingness to try any treatment prescribed, regular use of crutches or a cane, [and] regular contact with a doctor." Keyes-Zachary, 695 F.3d at 1167 (brackets and quotations omitted).

The first ALJ recited Johnson's testimony about her severe pain and postural limitations, as well as the side effects allegedly caused by her medications. He also recalled her allegations of restricted ADLs, including her limited ability to grip, hold a pen, and use a keyboard and mouse. Although he acknowledged that Johnson's impairments could be expected to cause the alleged symptoms, he found that her testimony concerning their intensity, persistence, and limiting effects was not credible to the extent it was inconsistent with her RFC. For example, he explained that she claimed to need a cane for walking, yet she was not prescribed a cane, and

9

there were consistent reports that she had a normal gait and station.  Moreover, despite her allegations of disabling arthritic pain, she was engaged in an exercise weight-loss program, which she was told to continue.  And he noted that her reports of pain were generally accompanied by mild or normal findings.  Based on this and other evidence, the ALJ concluded that Johnson had "partially credible hearing testimony"—a finding that the second ALJ determined was unchanged and that is supported by the evidence.[1]

## C

Johnson further asserts that the ALJ erred in relying on inaccurate hypothetical questions posed to the vocational expert at her first administrative hearing.  In particular, she claims the questions did not reflect her degenerative disc disease or postural limitations.  But the questions accounted for both:  they provided that the claimant would experience "mild to moderate chronic pain and discomfort likely noticeable at all times," and "would need to change positions fairly frequently," with the ability "to stay seated up to a half an hour and stand a little while and be seated again."

Johnson also claims that the ALJ erred in finding that she had transferable skills from her past relevant work as a reservationist.  "When an ALJ makes a finding

------

[1] Johnson's RFC/credibility argument exemplifies a common theme throughout her brief:  by incorporating the first ALJ's analyses, the second ALJ failed to correctly evaluate the evidence.  Although this approach may have created some ambiguity, Johnson fails to identify any ground for reversal.  The second ALJ indicated that he conducted an independent assessment of all the evidence, and we take him at his word.  See Wall, 561 F.3d at 1070.

that a claimant has transferable skills, he must identify the specific skills actually acquired by the claimant and the specific occupations to which those skills are transferable." Dikeman v. Halter, 245 F.3d 1182, 1185 (10th Cir. 2001). Consistent with these requirements, the ALJ indicated that Johnson had acquired customer service, record-keeping, typing, and computer skills that were transferable to jobs existing in significant numbers in the national economy, including order clerk, information clerk, and general clerk. His finding is supported by Johnson's own testimony that she has a bachelor's degree in behavioral science and early childhood education and worked full time for a taxi/limousine company, taking high-volume reservations and transferring skiers between the airport and ski resort.

## III

For the foregoing reasons, the district court's order is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

11